IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION            2011 JUN 24  P 4: 05

                                                    DEBRA P. HACKETT, CLK
                                                    U.S. DISTRICT COURT
                                                    MIDDLE DISTRICT ALA

| | |
|---|---|
| DEBRA S. FOSTER; BEASLEY<br>SINGLETON; LOUVENIA MCCRAY;<br>DR. RICHARD MARTIN,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>AUBURN UNIVERSITY<br>MONTGOMERY; KATHERINE<br>JACKSON<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> |

Civil Action No.: 2:11-CV-503-WHA-CSC

JURY TRIAL DEMANDED

## COMPLAINT

In support of their Complaint, Plaintiffs Debra S. Foster, Beasley Singleton, Louvenia McCray and Dr. Richard Martin offer the following:

## I.    JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, §1334(a)(4), 28 U.S.C. §2201, 42 U.S.C. §2000(e) et seq.  This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §1981.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. §2000(e) et seq. providing for injunctive and other relief against race, age and gender discrimination and retaliation.

2.     Plaintiffs timely filed their charges of race, age and gender discrimination, charges of retaliation, and discrimination disability with the Equal Employment Opportunity Commission (Commission) within 180 days of the last discriminatory act.  Plaintiffs file this

action within ninety (90) days after receipt of their Right to Sue letters issued by the Commission. [See Charges of Discrimination and Right to Sue letters attached collectively as Exhibit A.]

3.     The unlawful employment practices which are alleged herein were committed in the county of Montgomery in the Middle District of Alabama. Since Defendant Auburn University Montgomery is located in Montgomery, Alabama, venue is also appropriate in the Middle District of Alabama, Northern Division.

II.    **PARTIES**

4.     Plaintiff, Debra Foster, is an African-American citizen of the United States of America, over the age of forty (40) and a resident of Alabama. Plaintiff was formerly employed by Defendant Auburn University Montgomery as the Senior Director of Human Resources prior to her wrongful termination.

5.     Plaintiff, Beasley Singleton, is an African-American citizen of the United States of America, over the age of forty (40) and a resident of Alabama. Plaintiff was formerly employed by Defendant Auburn University Montgomery prior to his wrongful termination.

6.     Plaintiff, Louvenia McCray, is an African-American citizen of the United States of America, over the age of forty (40) and a resident of Alabama. Plaintiff was formerly employed by Defendant Auburn University Montgomery prior to her wrongful termination.

7.     Plaintiff, Dr. Richard Martin, is a white male over seventy years old formerly employed by Defendant Auburn University Montgomery whose tenure request was unlawfully denied.

8.     Defendant Auburn University Montgomery is an employer within the meaning of Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil

Rights Act of 1991", 42 U.S.C. §2000(e) et seq and 1981 and other federal statutes and laws. Defendant employs at least fifteen (15) persons. Defendant has its primary place of business and agent located in Montgomery County, Alabama.

9.      Defendant Dr. Katherine A. Jackson, is an adult Alabama resident employed by Auburn University Montgomery.  Defendant Jackson was Plaintiff Debra Foster's supervisor at the time of the Plaintiff Foster's wrongful termination.

## III.    FACTUAL BACKGROUND

### A.    Debra Foster

10.     In 2001, Plaintiff Debra Foster was hired by AUM to serve as its Director of Human Resources.

11.     Plaintiff Foster has a Bachelor of Science in Psychology from Auburn University Montgomery and a Master of Science in Personnel Management from Troy University.  Further, Plaintiff Foster is certified by Ball State University as a Certified Training Consultant.

12.     Plaintiff Foster has over twenty years experience in human resource management and development.  Plaintiff Foster is certified as a Senior Professional in Human Resources (SPHR) by the Society for Human Resource Management and is an active member of the Society for Human Resource Management.

13.     Plaintiff Foster has served as an adjunct faculty member for Indiana Business College and the University of Maryland.

14.     Plaintiff Foster was a Commissioned United States Army Officer (Captain) who served as a personnel management and supply management officer.  She is a Gulf War era veteran.

15.     During Plaintiff Foster's tenure at Auburn University at Montgomery, she

accomplished the following:

  a. Created and conducted a series of training sessions for supervisors and employees;

  b. Assisted in the establishment and implemented a new compensation system for the University in 2004;

  c. Assisted in the establishment and implemented a new performance management (PM) system for the University in 2006; created refresher fact sheets yearly as well as trained supervisors on PM twice a year;

  d. Established, managed and implemented AUM Jobs, in 2006, a web-based recruitment tool used to establish position vacancies, track applicants, advertise established/vacant positions, and assisted with the facilitation of the Position Description Questionnaire & Requisition Processes; established and implemented a reference letter tool in AUM jobs in 2009;

  e. Managed the conversion from the Human Resource System SIS Plus to Banner HR in 2006; approved electronic personnel action forms daily.

  f. Trained and mentored staff on most recent human resources related principles and federal laws, including training of supervisors on federal and state laws and consulted with them on various topics;

  g. Established a training program for staff in HR:  conducted training for supervisors and employees on FMLA, FLSA, harassment, diversity performance management and a variety of other topics;

  h. Consulted with department heads and supervisors regarding appropriate action to take for progressive discipline daily;

  i. Mediated employment-related and supervisor-related disputes;

  j. Configured the Office of Human Resources from a grass-roots level from 2001 to 2009.

  k. Continued to set up and establish a more functioning Office of Human Resources in 2008 and 2009;

  l. Developed a more comprehensive orientation program for new employees and supervisors;

  m. Established and implemented a cross-training program university-wide;

  n. Served on the Forms Panel for the Human Resource Certification Institute to assist with validating the Senior Professional Human Resources (SPHR) and the Professional in Human Resources (PHR) exams administered by the Society of Human Resources;

  n. Served on an item-writing panel (writing test items) for the Society of Human Resource Management for the Professional in Human Resources (PHR) and the Senior Professional in Human Resources (SPHR) certification exam.    Served as a member of the local and national chapters of the Society of Human Resources Management.

  o. Served as University Sponsor for the University's processing of paperwork for foreign nationals – H1Bs, H2Bs, and J1 VISAs, Permanent Residence Cards and many other forms of documentation.    Plaintiff Foster, alone at AUM, processed all documentation with Fisher & Phillips Law Firm with Attorney Kimberly Thompson.

      p.     Constantly reviewed and modified the human resource portion of the University's strategic plan and University's Diversity strategic plan.

      q.     Constantly reviewed and revised policies at the University as the laws changed or as necessary.

      s.     Created a suggestion box for visitors in the office in 2005 and a electronic suggestion box in 2009 for visitors on the web.

      t.     Serve as a private employment and training consultant with clients in a variety of locations.

16.     From 2004 Plaintiff Foster served as the Senior Director of Human Resources.

17.     In July 2008, Dr. Katherine Jackson, a white female, became Plaintiff Foster's supervisor.

18.     Dr. Jackson exhibited a very different attitude toward African Americans.

19.     Dr. Jackson was condescending towards Plaintiff Foster and other African Americans.

20.     Dr. Jackson constantly ridiculed and harassed Plaintiff Foster.

21.     In comparison with those in her management class level, Plaintiff Foster was paid less than her white counterparts. Further, Plaintiff Foster was paid less than her counterpart males.

22.     While Plaintiff Foster attempted to cooperate with Dr. Jackson as much as possible, she became increasingly difficult to work with, frequently looking to find fault and show blame wherever she could, while in the process ignoring white contemporaries' blatant policy violations and other unacceptable behavior.

23.     The work environment at Auburn University of Montgomery became obviously hostile and discriminatory under the supervision of Dr. Jackson.

24.     On March 5, 2009, given Plaintiff Foster's role and responsibilities with the University, she notified the Chancellor of the hostility and racially discriminatory environment.

25.     The University retained a consultant, Christine Sims to look into Plaintiff Foster's

allegations; however, the consultant's activities were directed by and through Dr. Jackson.

26.     In addition, Plaintiff Foster suffers from several disabilities: diabetes; severe neuropathy in upper and lower extremities; and, high blood pressure, which required her to request leave under the FMLA during her tenure at the University.

27.     Dr. Jackson would constantly question Plaintiff Foster's requests for FMLA leave.  Dr. Jackson would force Plaintiff Foster to create labels that stated which condition was the basis of her FMLA requests.

28.     Following Plaintiff Foster's claim of a racially hostile environment and requests for FMLA leave, Dr. Jackson and the University repeatedly retaliated against her, which ultimately lead to Plaintiff Foster's termination on July 31, 2009.

29.     The termination explanation provided by the University was simply pretextual, and a disguise for the real basis of Plaintiff Foster's termination which was her race, disabilities, complaints of the racially hostile environment, and requests for leave under the FMLA.

30.     Plaintiff Foster also learned that a less qualified, younger, not disabled individual has assumed her responsibilities.

31.     Plaintiff Foster maintains that the continued harassment, as well as the wrongful termination was retaliation from the claim that she made against Dr. Jackson, as mentioned above and the racially hostile work environment.

32.     Based upon the foregoing, Plaintiff Foster believes that she is a victim of discrimination and retaliation in violation of Title VII and other federal laws.  She has not only lost the economic benefits of her employment, but she has also suffered significant mental and emotional anguish.  In addition, Plaintiff Foster has incurred the expense of hiring an attorney. Plaintiff Foster seeks relief for all of these damages and those continual damages that she is

suffering as a result of the University's actions, including but not limited to those outlined above.  Plaintiff Foster seeks any and all benefits she entitled to under the law.

**B.    Beasley Singleton**

33.    Plaintiff Beasley Singleton was employed at Auburn University at Montgomery for nearly twenty years.

34.    On August 26, 2010, Plaintiff Singleton received written notice from Wanda Blake, Vice Chancellor for Financial Affairs that his position as Housing Facilities Supervisor was being abolished and his last day of employment at Auburn University Montgomery would be September 30, 2010.

35.    Plaintiff Singleton believes that his termination was based upon his race and age.

36.    Plaintiff Singleton's position in reality was not abolished but is being handled by Wanda Blake, a white female, and Daryl Morris, a white male under the age of 40. Daryl Morris was determined by Plaintiff Foster and his supervisor, Dr. Alecia Cyprian, an African-American then Dean of Students, to not meet the job qualifications.  Dr. Cyprian and Plaintiff Foster expressed their assessment to Wanda Blake and Defendant Jackson, both white females. Ms. Blake and Defendant Jackson ignored Daryl Morris' inability to perform the functions of the job and gave him the title Director of Housing. Mr. Morris had no experience and is not qualified.

37.    Neither Wanda Blake nor Daryl Morris are qualified to give mechanical directions in a maintenance facility in a setting such as Auburn University Montgomery.

38.    Wanda Blake has a history of making racially derogatory comments, such as "black people should not make so much money" or something to that effect.

39.    Also, Plaintiff Singleton has been referred to as the "Do Boy" while employed at Auburn University Montgomery.

40.     Auburn University Montgomery seeks to explain their employment decision by stating that they outsourced the Housing and Maintenance Department to a third party company and that all employed within that department would be interviewed by the new company.

41.     The new company did not interview Plaintiff Singleton and based upon information Plaintiff Singleton received Auburn University Montgomery, specifically Wanda Blake, instructed the new company not to hire Plaintiff Singleton.

42.     Plaintiff Singleton's termination is one of many terminations at Auburn University Montgomery all of which establish a clear pattern and practice of discriminatory conduct at Auburn University Montgomery.

43.     Further, AUM failed to follow policies and procedures by not placing Plaintiff Singleton in positions available at the University given his seniority.  AUM's refusal to do so further establishes Auburn University Montgomery's pretext and intentional discrimination.

**C.     Louvenia McCray**

44.     Plaintiff Louvenia McCray worked at Auburn University Montgomery for nearly seven (7) years.

45.     On March 16, 2010 Plaintiff McCray was laid off from her position as custodian with Auburn University Montgomery.

46.     Prior to her termination, Plaintiff McCray was subjected to racial and age discrimination.

47.     The University allowed Judith Haggin, a white female significantly younger than Plaintiff McCray to poorly perform her job without adequate punishment.  She was allowed to sleep on the job and read books rather than perform her work.  In addition, she was also permitted to abuse the absenteeism policy.

48.     The University did not enforce its policies equally with regard to Plaintiff McCray and Ms. Haggin.

49.     In addition, at the time of Plaintiff McCray's termination, a custodian position for which she was qualified was available.

50.     However, Darris Morris, a white male, refused to transfer Plaintiff McCray into that available position.

51.     Auburn University Montgomery's policies require transfer of laid off employees with seniority to be given available positions.

52.     Auburn University Montgomery refused to follow these procedures.

53.     Auburn University Montgomery gave as its explanation for Plaintiff McCray's layoff that it was outsourcing custodial positions; however, they did not eliminate all custodial positions and refused to allow Plaintiff McCray to assume the remaining ones available.

54.     Auburn University Montgomery's explanation is simply pretextual.

55.     Auburn University Montgomery has a pattern and practice of racial, age and gender discrimination as established above and with the terminations and tenure denials which have taken place in the last two years.

**D.      Dr. Richard Martin**

56.     Dr. Richard Martin was employed by Defendant Auburn University Montgomery as its Justice and Public Safety Department Head.   Dr. Martin's accomplishments are overwhelming and explored in the attached Exhibit B.

57.     Dr. Martin is over seventy years old.   While employed at Auburn University Montgomery, Dr. Martin's superiors referred to his age, often saying to him "Hey Old Man".

58.     Dr. Martin was denied tenure despite having met all the requirements for tenure.

59.     Other younger individuals and females similarly situated were granted tenure.

60.     Dr. Martin's qualifications far exceeded those in comparison.  Those younger females and younger males did not meet the tenure requirements yet received tenure.

61.     Dr. Martin was wrongfully discriminated against and denied tenure on the basis of his age and gender.

62.     Defendant Auburn University Montgomery has a pattern and practice of discrimination in its employment decisions.

## III.   CAUSES OF ACTION

### A.     Count One – Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, §704(a), as amended in 42 U.S.C.A. § 2000(e) et seq.

63.     Plaintiffs adopt and incorporate herein all preceding paragraphs of this Complaint as if fully set forth herein.

64.     Plaintiffs were subject to different and more onerous terms of employment than were white similarly situated employees as set forth above.

65.     Defendants created a racially hostile working environment for Plaintiffs as described herein.

66.     Plaintiffs aver they have pursued and exhausted all of their administrative remedies.

67.     Plaintiffs aver that Defendants' actions as described herein were willful and wanton, such that an award of punitive damages is appropriate.

68.     Plaintiffs have suffered embarrassment, humiliation, mental anguish, financial losses, and other injuries as a result of Defendants' discriminatory conduct.

WHEREFORE, the above premises considered, Plaintiffs respectfully pray that this Court grant the following relief:

(a)      judgment declaring that Plaintiffs were subjected to a hostile work environment by the Defendants;

(b)      injunction restraining the Defendants from further subjecting them and other employees to a hostile environment;

(c)      judgment awarding Plaintiffs such compensatory and punitive damages to which they may be entitled;

(d)      judgment restoring all other benefits that would have been available to Plaintiffs, had these incidents not occurred;

(e)      judgment awarding Plaintiffs their costs in this action, including reasonable attorneys' fees;

(f)      judgment that the employment policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of the Plaintiffs as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the Civil Rights Act of 1991, 42 U.S.C. §2000(e) et seq. and §1981;

(g)      permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000(e) et seq. and §1981;

(h)      judgment awarding Plaintiffs front-pay, back-pay (plus interest), compensatory damages, punitive damages, injunctive relief, declaratory relief, benefits, attorneys fees and costs;

(i)      judgment awarding all such other relief as may be appropriate.

B.      **Count Two – Race and Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended §2000(e), et seq. and the 1991 Civil Rights Act, 42 U.S.C. §1981(a), 42 U.S.C. §1981.**

69.     Plaintiffs adopt and incorporate herein all preceding paragraphs of this Complaint as if fully set forth herein.

70.     Plaintiffs aver that the personnel actions taken against them, including their termination, violated their right to be free from racial, age and gender discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §2000(e) et seq. and the 1991 Civil Rights Act, 42 U.S.C. §1981(a), 42 U.S.C. §1981.

71.     Plaintiffs were terminated and denied tenure because of their race, age and gender.

72.     Plaintiffs aver that they have pursued and exhausted all of their administrative remedies.

73.     Plaintiffs aver that they have lost income and benefits, suffered mental anguish, public humiliation, embarrassment, and other injuries as a result of the Defendants' wrongful conduct.

WHEREFORE, the above premises considered, Plaintiffs respectfully pray that this Court grants them the following relief:

(a)     judgment declaring that Plaintiffs were discriminated against by the Defendants, due to their race and age;

(b)     injunction requiring that Defendants grant Plaintiffs all employment benefits and other rights to which they may have been entitled, had they not been the victim of race and gender discrimination, including but not limited to back pay (plus interest), front pay, compensatory damages, punitive damages, injunctive relief, declaratory relief, benefits,

costs;

      (c)     judgment that the employment practices, policies, procedures, conditions and customs of the Defendants are violative of the rights of the Plaintiff as secured by Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, 42 U.S.C. §2000(e) et seq. and §1981;

      (d)     grant a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, 42 U.S.C. §2000(e) et seq. and §1981;

      (e)     Award such other relief as may be appropriate.

      **C.**     **Count III – Retaliation in Violation of Title VII of the Civil Rights Act of 1964, §704(a), as amended in 42 U.S.C.A. §2000(e) et seq.**

      74.     Plaintiffs adopt all preceding paragraphs of this Complaint as if fully set out herein.

      **75**.     Plaintiffs aver that they have pursued their administrative remedies and opposed the unlawful discrimination acts of Defendants and as a result Defendants retaliated against them.

      76.     Plaintiffs' terminations and tenure denial are in violation of Title VII of the Civil Rights Act of 1964, §704(a), as amended in 42 U.S.C.A. § 2000(e) et seq.

      **77**.     As a result of Defendants' illegal discrimination and retaliation, Plaintiffs have suffered lost wages, embarrassment, public humiliation, mental anguish, and other injuries.

      **78**.     Defendants' actions were willful and wanton, such that an award of punitive damages is appropriate.

      WHEREFORE, the above premises considered, Plaintiffs respectfully pray that this Court

grant the following relief:

(a)    injunction restraining Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, 42 U.S.C. §2000(e) et seq. and §1981;

(b)    award Plaintiffs front-pay, back-pay, interest, compensatory damages, punitive damages, injunctive relief, attorneys fees, costs, benefits and any other relief Plaintiffs may be entitled.

### D.    Count IV – Negligence/Wantonness

79.    Plaintiffs adopt all preceding paragraphs of this Complaint as if fully set forth herein.

80.    Plaintiffs were loyal, qualified and competent employees.

81.    Upon information and belief, it was known or should have been known to Defendant Auburn University Montgomery that the Plaintiffs supervisors and those others with supervisory authority and decision making power over Plaintiffs, engaged in discriminatory and retaliatory practices, and did not have the temperament or competence to make employment decisions regarding Plaintiffs or to exercise supervisory authority over Defendant's employees.

82.    Defendant Auburn University Montgomery is liable for the actions of Defendant Jackson and those with supervisory authority and decision making power over Plaintiffs as they were agents of Defendant Auburn University Montgomery and are liable under the doctrine of Respondeat Superior.

83.    Defendant Jackson and others with supervisory authority have a pattern and practice of creating a hostile work environment and for making discriminatory employment

14

decisions.

84.     Defendants, by their actions and omissions, negligently and/or wantonly breached the standard of care owed to Plaintiffs while employees of Defendant AUM.  The conduct of the Defendants negligently and/or wantonly breached Defendants' duty to Plaintiffs to exercise due care.

85.     Defendants' negligent, willful and wanton breach was the actual and proximate cause of Plaintiffs' injuries.

86.     As a result of the acts of Defendants, Plaintiffs have been injured and damaged as follows: they have suffered loss of pay, benefits, promotions and career advancement; they have suffered emotional trauma; they have suffered mental pain and anguish; they have incurred expenses in an attempt to enforce their legal rights; they have suffered loss of income; they have been offended by Defendants' discriminatory policies; and they have been otherwise injured and damaged.

E.     **Count VI - Age Discrimination in Violation of Age Discrimination in Employment Act ("ADEA").**

87.     Plaintiffs adopt all preceding paragraphs of this Complaint as if fully set forth herein.

88.     Defendant Auburn University Montgomery's actions in terminating Plaintiffs and deny Plaintiff Martin's tenure application violated the Age Discrimination in Employment Act.

89.  .  Plaintiffs are all over the age of forty.

90.     Plaintiffs were qualified for their positions at the time of termination and/or met the requirements of tenure.

91.     The evidence establishes that Defendant Auburn University Montgomery intentionally discriminated against Plaintiffs because of their ages as the Plaintiffs were replaced

with younger individuals and/or younger persons were granted tenure.

92.     Plaintiffs seek any and all damages and relief to which they are entitled under ADEA including but not limited to costs, attorneys fees, front pay and punitive, back pay, injunctive relief and compensatory damages.

**F.     Count VII – Violation of American's with Disabilities Act**

93.     Plaintiff Debra Foster adopts all preceding paragraphs of this Complaint as if fully set forth herein.

94.     Plaintiff Foster has several disabilities as that term is defined under American with Disabilities Act ("ADA").

95.     Plaintiff Foster is qualified to perform the essential functions of the job she had at Auburn University Montgomery.

96.     Defendant AUM terminated Plaintiff Foster because of her disability in violation of ADA, 42 U.S.C. §§ 12101-12213.

97.     Plaintiff Foster seeks any and all damages she is entitled to under ADA.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs seek compensatory and punitive damages, attorneys fees, costs, expenses and all other available damages.

Respectfully submitted this the 24th day of June 2011.

Jamie A. Johnston

OF COUNSEL:

FRANK M. WILSON, P.C.
P.O. Box 2389
Montgomery, Alabama  36102-2389
334-263-2560 Telephone
334-264-2658 Telecopier
Jamie@frankmwilsonpc.com

**JURY TRIAL DEMANDED ON ALL TRIABLE ISSUES.**

OF COUNSEL

**PLEASE SERVE DEFENDENTS VIA CERTIFIED MAIL**

Auburn University Montgomery
7440 East Drive
Montgomery, Alabama  36117

Katherine Jackson
c/o Auburn University Montgomery
7440 East Drive
Montgomery, Alabama  36117