IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBRA S. FOSTER; ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11-cv-503-WHA |
| ) | (WO) |
| AUBURN UNIVERSITY ) | |
| MONTGOMERY; KATHERINE ) | |
| JACKSON ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on an Amended Motion to Dismiss (Doc. # 19) filed by Defendants Auburn University Montgomery ("AUM") and Dr. Katherine Jackson ("Jackson") on September 30, 2011.

Following this court's granting of the Defendants' Motion to Sever (Doc. #15), the Plaintiff, Debra S. Foster ("Foster"), filed an Amended Complaint in this court on September 9, 2011 (Doc. # 16), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 of the United States Code ("§ 1981"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Those claims are as follows: racially hostile working environment in violation of Title VII (Count I); race, age, gender, and disability discrimination in violation of Title VII and § 1981 (Count II); retaliation in violation of Title VII (Count III), negligence and wantonness in the hiring and supervision of its agents (Count IV); age discrimination in violation of the ADEA (Count V); disability discrimination in

violation of the ADA (Count VI); and fraudulent inducement and misrepresentation by the Defendants (Count VII). On September 23, 2011, the Defendants filed a joint Motion to Dismiss (Doc. # 17), and on September 30, 2011, the Defendants filed an Amended Motion to Dismiss the Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On October 17, 2011, the Plaintiff filed a Response to the Defendants' Motion to Dismiss (Doc. #21), and on October 24, 2011, the Defendants filed a Reply to the Plaintiff's Response (Doc. # 22).

For reasons to be discussed, the Amended Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## II.  MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id.* (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."

2

*Id.* at 570.  The factual allegations  "must be enough to raise a right to relief above the speculative level."  *Id*. at 555.

### III.  FACTS

Foster's Complaint alleges that she is an African-American citizen of the United States and is a resident of Alabama.  She is over 40 years of age and was formerly employed by Defendant AUM as the Senior Director of Human Resources.  While at AUM, she was supervised by Defendant Katherine Jackson, a white female.  The Complaint sets out Foster's extensive education background and her workplace accomplishments.  Foster alleges that, despite her qualifications and achievements, Jackson, her supervisor as of July 2008, was condescending towards her and treated her less favorably than white employees.  Foster provides no specific examples of this disparate treatment other than to say that Jackson "constantly ridiculed her" and was "frequently looking to find fault and show blame wherever she could, while in the process ignoring white contemporaries' blatant policy violations and other unacceptable behavior." (Doc. #19 at ¶ 17, ¶ 19).

Their relationship deteriorated to the point that on March 5, 2009, Foster informed AUM's Chancellor of the hostile and racially discriminatory workplace that Jackson had created.  To remedy this situation, the University hired an outside consultant to investigate, but Foster alleges that the consultant's investigation was directed by Jackson.

Furthermore, Jackson constantly harassed Foster for having to take FMLA leave for her disabilities: high blood pressure, diabetes, and neuropathy in the upper and lower extremities.  Following the investigation of Foster's claim to the Chancellor and her FMLA leave requests,

AUM terminated her on July 31, 2009, and at least part of her previous work responsibilities have been taken over by a white female.

## IV. DISCUSSION

### 1. Timeliness of Motion to Dismiss

As a threshold matter, Foster's first contention is that the Defendants' Motion to Dismiss is untimely. (Doc. #21 at 6). Specifically, Foster contends that the Federal Rules of Civil Procedure require the Defendants to file an answer within 21 days after being served with the Complaint. Fed. R. Civ. Pro. 12(a)(1)(A)(i). Foster argues that this deadline has passed without any action on behalf of the Defendants. Foster further contends that by filing the Motion to Sever in response to the Complaint, instead of a Motion to Dismiss or other responsive pleading, the Defendants have essentially waived the arguments raised by the Motion to Dismiss.

The Defendants counter by explaining that Foster's argument confuses responsive pleadings with motions. The Defendants argue that Rule 12(a), upon which Foster relied, governs only those pleadings enumerated under Rule 7(a) of the Federal Rules of Civil Procedure. The Defendants argue that Rule 12(b)(6) motions to dismiss are governed instead by Rule 12(h)(2) which explains in relevant part that "[f]ailure to state a claim upon which relief can be granted ... may be raised: (A) in any pleading allowed or ordered under Rule 7(a)." Fed. R. Civ. Pro. 12(h). In this court's order granting the Defendants' Motion to Sever, Foster was instructed to file an Amended Complaint by September 9, 2011. (Doc. #15 at 8). The Defendants argue that, because of the order to file an Amended Complaint, they had 14 days to respond to the Amended Complaint. *See* Fed. R. Civ. Pro. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time

4

remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). Defendants argue that pursuant to Rule 12(b) Foster's new pleading date, September 9, 2011, is the proper one for determining if the Defendants' September 23, 2011, Motion to Dismiss is timely filed, and, having been filed within 14 days of the Amended Complaint, the Motion to Dismiss is timely.

This court agrees with the Defendants and finds that the Motion to Dismiss is not untimely because it was filed within 14 days of the Amended Complaint pursuant to Rules 12(b), 12(h)(2), and 15(a)(3) of the Federal Rules of Civil Procedure.[1]

## 2. Individual Claims

### Count I – Hostile Work Environment

As stated by the Eleventh Circuit, to plead a hostile work environment claim the plaintiff is "required to allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). Although the *Edwards* court was addressing a § 1981 claim, the Eleventh Circuit has explained that the analytical frameworks are the same for both § 1981 and Title VII retaliation claims. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275

---

[1] This court notes that the Defendants filed an Amended Motion to Dismiss after September 23, 2011, which this court found to moot the previous Motion to Dismiss. The Plaintiff did not challenge the timeliness of the Amended Motion to Dismiss.

(11th Cir. 2002) (requiring the same elements for both § 1981 and Title VII hostile work environment claim); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 & n. 2 (11th Cir. 2002) (noting that Title VII and § 1981 hostile work environment claims have the same elements and are subject to the same analytical framework). Regarding the liability of employers when a supervisor is the one committing the discriminatory behavior, courts from this circuit have adhered to the framework set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998). One such method in which "[a]n employer may be held liable for the discriminatory acts of a supervisory employee . . . [is] if the discriminatory action has tangible results, 'like hiring, firing, promotion, compensation, and work assignment.'" *Mangrum v. Republic Industries, Inc.*, 260 F. Supp. 2d 1229, 1246 (N.D. Ga. 2003) (quoting *Faragher*, 524 U.S. at 790).

Turning to Foster's Complaint, she alleges that she is an African-American, and thus, she is a member of a protected group. Furthermore, she alleges that she was subject to the "different attitude" that Jackson had towards African-Americans which created such a hostile environment that Foster felt she needed to report the racial discrimination to AUM's Chancellor. Therefore, Foster has alleged that she was subject to discrimination because of her membership in a protected group, and the discrimination was enough that Foster involved Jackson's superior. Also, Foster has alleged that her supervisor, Jackson, was the perpetrator of the alleged discrimination and that Jackson was responsible for Foster's employment decisions–such as firing and altering the work assignment. Therefore, taking all of the facts provided in the Complaint, Foster has met Rule 8's plausibility requirement for hostile work environment under Title VII.

Count II – Discrimination in Violation of Title VII and § 1981

6

"Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002), it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008). Moreover, complaints alleging discrimination must still meet the *Iqbal* and *Twombly* "plausibility" standard. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (addressing the effect of *Iqbal* and *Twombly* on the sufficiency of a Title VII hostile work environment claim). Therefore, in order to survive a motion to dismiss, the plaintiff's complaint must contain facts which "[allow] the court to draw the reasonable inference" that the defendant has engaged in intentional race discrimination. *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949. This court recognizes that the methods for alleging "a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). One such way is for a plaintiff to allege that she is qualified for a job, yet she is fired and replaced by an individual outside of her protected class. *Krieg v. Paul Revere Life Ins., Co.*, 718 F.2d 998, 999 (11th Cir. 1983) (per curiam). Another method is for a plaintiff to allege "that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson*, 376 F.3d at 1087.

It is also important to note that a "claim for disparate treatment pursuant to Title VII and pursuant to § 1981 has the same legal elements." *Leige v. Capitol Chevrolet, Inc.*, 895 F. Supp. 289, 293 (M.D. Ala. 1995). Therefore, if a plaintiff alleges facts sufficient to support a Title VII claim, then she alleges facts sufficient to support a § 1981 claim. *Leige*, 895 F. Supp. at 293.

7

The important distinction between a Title VII claim and a § 1981 claim is that Title VII provides for relief against an employer, *Death v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006), while employers and "[s]upervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981." *Leige*, 895 F. Supp. at 293.  Therefore, in so much as Foster's Complaint alleges Title VII claims against Jackson, those claims are dismissed.

Turning to Foster's Complaint, she alleges that she was not only qualified for the position that she held at AUM but also had many achievements to her credit during her employment with AUM.  Moreover, she alleges that she "was paid less than her white counterparts . . . [and] her counterpart males." *Id.* at ¶ 18.  Also, Foster alleges that some of her work was taken over by a white female after her termination.  Therefore, Foster has alleged that she faced different treatment than similarly situated non-protected class employees and that she was replaced by a non-protected class employee.  Accordingly, she has properly satisfied the Rule 8 plausibility burden for her Title VII racial and gender discrimination and § 1981 racial discrimination against AUM.

As to her claim against Jackson, Foster alleges that despite her accomplishments and qualifications, she faced constant blame from Jackson while her white contemporaries' "blatant violations and other unacceptable behavior" were ignored.  (Doc. #19 ¶ 19).  Furthermore, Foster alleges that Jackson was her supervisor, and as a "[s]uperviso[r] with the capacity ... recommend" employment decisions, Jackson is subject to § 1981.  Given the alleged preferential treatment of non-protected class, similarly-situated, employees by Jackson as a supervisor, Foster has satisfied the Rule 8 plausibility burden for her § 1981 claim against Jackson.

Count III – Title VII Retaliation

"To state a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Lord v. City of Ozark*, No. 1:10cv451–WHA, 2010 WL 4780680, *5 (M.D. Ala. November 17, 2010) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001)). "There are two types of protected activity that can serve as the basis for a retaliation claim: (1) if an employee opposed any practice that is an unlawful employment practice (the 'opposition clause'); and (2) if an employee 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the 'participation clause')." *Lord*, 2010 WL 4780680 at *5 (citing 42 U.S.C. § 2000e–3(a)). Therefore, to allege a case of retaliation, a plaintiff will have to allege either an act falling under the opposition clause or the participation clause.

Turning to Foster's Complaint, she alleges Jackson's racially discriminatory behavior got to the point that she reported this behavior to AUM's Chancellor. This act of reporting the racial discrimination in the workplace falls squarely under the opposition clause. Foster further alleges that she was subject to termination, and that this termination occurred as a result of her complaint to the Chancellor. Therefore, Foster has satisfied Rule 8's plausibility requirement for retaliation under Title VII.

### Count IV – Negligence and Wantonness

Foster also claims that the Defendants engaged in negligent and wanton behavior in its supervision of its supervisory employees. Under Alabama law, Foster, in order to state a claim for negligent supervision, "must allege that (1) an employer knew or should have known of the

employee's incompetency; (2) the incompetency at issue and the failure of the employer to prevent the incompetency through supervision was the proximate cause of the plaintiff's injury; and (3) the tort committed by the employee, and not prevented due to negligent supervision, was a common-law, Alabama tort." *Ellis v. Advanced Technology, Services, Inc.*, No. 3:10-cv-555-WHA, 2010 WL 3526169, *2 (M.D. Ala. September 3, 2010).  The third requirement defeats Foster's Count IV.  Because Alabama does not recognize a common-law tort for gender discrimination, *see Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002), or race discrimination in employment, *see Rabb v. Georgia Pacific, LLC*, No. CA 09-0420-C, 2010 WL 2985575, *16 (S.D. Ala. July 26, 2010), Foster's claim fails since it rests on allegedly negligent "conduct that is employment discrimination, but does not support a common-law tort." *Thrasher*, 195 F. Supp. 2d at 1320.  Accordingly, the Foster's Count IV is dismissed with prejudice as to AUM.

As to Defendant Jackson, she is not an employer eligible for suit as to a theory of negligent supervision, and Foster has not alleged this in her Complaint.  In so much as the Complaint alleges this count against Jackson, it is dismissed with prejudice.

Count V – ADEA Violation

The Eleventh Circuit, like most other circuits, employs nearly identical frameworks for proving a prima facie case for both Title VII and the ADEA.  *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 (11th Cir. 2001).  Like Title VII, the ADEA is a suit that is properly brought against employers and not individual employees in either their individual or official capacities. *See Griswold v. Alabama Dept. of Inuds. Relations*, 903 F. Supp. 1492, 1496-97 (M.D. Ala.

1995).  Therefore, in so far as Foster's Complaint attempts to bring an ADEA claim against Jackson, that claim fails.

In order to plead a prima facie case, the plaintiff will need to show that "he was: (1) a member of the protected class; (2) qualified for his current position; (3) subject to adverse employment action; and (4) treated less favorably than any younger, similarly situated employee." *East v. Clayton County, GA*, No. 10–15749, 2011 WL 3279197, *6 (11th Cir. August 1, 2011) (citing *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997)). Although it is likely not required, any complaint that alleges the elements articulated in *East* will meet the plausibility requirement of Rule 8. *Cf. Edwards v. Prime, Inc*., 602 F.3d 1276, 1300 (11th Cir. 2010) (addressing the effect of *Iqbal* and *Twombly* on the sufficiency of a Title VII hostile work environment claim).

Turning to Foster's Complaint, she alleges that she was over 40 years of age at the time of the events giving rise to her claim and accordingly a member of the ADEA's protected class of individuals.  Her complaint alleges that "[t]he evidence establishes that AUM intentionally discriminated against Plaintiff because of her age as the Plaintiff was replaced with a younger individual." (Doc. #19 ¶ 59).  That allegation, along with the allegations previously discussed, demonstrate that Foster has alleged that she was a member of the protected age group, she was qualified for her position when she was terminated, and that a younger individual took over her position after termination.  Accordingly, Foster has satisfied the plausibility requirement of Rule 8.

Count VI – ADA

Like the ADEA and Title VII claims, the Eleventh Circuit employs the *McDonell Douglas* standard for proving a prima facie case for a violation of the ADA's employment discrimination provisions. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1149-50 (11th Cir. 2005). Therefore, in "order to establish a prima facie case of ADA discrimination, [Plaintiff] had to show that he: (1) had a disability; (2) was otherwise qualified to perform the job; and (3) was discriminated against based on his disability." *Collado*, 419 F.3d at 1149 (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192, 1193 (11th Cir. 2004)). Like the ADEA and Title VII, "individual liability is precluded for violations of the ADA's employment discrimination provision." *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). Therefore, in so far as Foster's Complaint attempts to bring an ADA claim against Jackson, that claim fails.

Turning to her claim against AUM, Foster alleges that she "suffers from several disabilities: diabetes; severe neuropathy in upper and lower extremities; and, high blood pressure, which required her to request leave under the FMLA during her tenure at the University." (Doc. #19 ¶ 23). As alleged previously, Foster claims that she was highly qualified for her position, but, nonetheless, she was terminated after requesting FMLA leave. Therefore, she has alleged that she was discriminated against because of her disability. Accordingly, Foster has satisfied the plausibility requirement of Rule 8 for her ADA employment discrimination claim against AUM.

Count VII – Fraudulent Inducement and Misrepresentation

Foster also alleges that AUM fraudulently induced her to begin her employment and made false representations about AUM's policies regarding favorable treatment of loyal

12

employees. She makes no factual allegation that Jackson participated in this behavior, so in so far as Foster's claim includes a claim against Jackson, it is dismissed. Regarding the claim against AUM, Foster's claim is also due to be dismissed.

As Foster concedes in her brief, Auburn University, of which AUM is a part, is considered the State of Alabama for the purpose of sovereign immunity. *See*, *e.g.*, *Gulf State Park Auth. v. Gulf Beach Hotel, Inc.*, 22 So. 3d 432, 435 (Ala. 2009). Therefore, pursuant to the Alabama Constitution Article I, § 14, AUM is immune to the state law claims brought by Foster. Accordingly, her state law claim is due to be dismissed with prejudice.

### 3. Material to Strike

Foster's Complaint contains a few errors appearing to stem from her attorney's handling of this court's motion to sever. It appears that her attorney simply repeated identical language for each plaintiff's claims which resulted in immaterial language appearing in Foster's Count II for Title VII and § 1981 workplace discrimination. Specifically, the reference to denial of tenure is immaterial because Foster does not allege that she was denied tenure. Furthermore, as explained above, Title VII claims only apply to race and gender discrimination and § 1981 claims only encompass racial discrimination, therefore, the mention of age or disability discrimination found in Foster's Count II is also immaterial. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own." Accordingly, the enumerated immaterial matter in Count II is hereby stricken.

### V. **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED as follows:

    1. The Amended Motion to Dismiss is GRANTED to the following extent:

        a. As to Defendant Jackson, Counts I, III, IV, V, VI, and VII are DISMISSED with prejudice.  The Title VII portion of Count II is likewise DISMISSED with prejudice.

        b. As to Defendant AUM, Counts IV and VII are DISMISSED with prejudice.

    2.  The Motion to Dismiss is DENIED in all other respects.

    3.  This matter will proceed on Counts I, II, III, V, and VI as to AUM, and Count II (§ 1981) as to Jackson.

Done this 8th day of December, 2011.
.

                /s/ W. Harold Albritton  
                W. HAROLD ALBRITTON  
                UNITED STATES DISTRICT JUDGE