IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBRA S. FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11-cv-503-WHA |
| ) | (WO) |
| AUBURN UNIVERSITY ) | |
| MONTGOMERY; KATHERINE ) | |
| JACKSON ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Second Motion to Dismiss (Doc. # 32) filed by Defendants Auburn University Montgomery ("AUM") on February 9, 2012.

Following this court's partial granting of the Defendants' Amended Motion to Dismiss (Doc. #19), the Plaintiff's, Debra S. Foster ("Foster"), case was to proceed on Count I – racially hostile working environment in violation of Title VII as to AUM; Count II – race and gender discrimination in violation of Title VII and § 1981 as to AUM and Defendant Katherine Jackson ("Jackson"); Count III – retaliation in violation of Title VII as to AUM; Count V – age discrimination in violation of the ADEA as to AUM; and Count VI – disability discrimination in violation of the ADA as to AUM. AUM filed the present Motion to Dismiss alleging that Counts V and VI are due to be dismissed because of AUM's Eleventh Amendment immunity. On March 2, 2012, Foster filed a Response to the Defendants' Second Motion to Dismiss (Doc.

# 34), and on March 9, 2012, the Defendants filed a Reply to the Plaintiff's Response (Doc. # 35).

For reasons to be discussed, the Second Motion to Dismiss is due to be GRANTED.

## II. MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id.* (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III. FACTS [1]

---

[1] This statement of the facts is identical to this court's statement from its Order partially granting the Defendants' Amended Motion to Dismiss. (Doc. #23).

Foster's Complaint alleges that she is an African-American citizen of the United States and is a resident of Alabama. She is over 40 years of age and was formerly employed by Defendant AUM as the Senior Director of Human Resources. While at AUM, she was supervised by Defendant Katherine Jackson, a white female. The Complaint sets out Foster's extensive education background and her workplace accomplishments. Foster alleges that, despite her qualifications and achievements, Jackson, her supervisor as of July 2008, was condescending towards her and treated her less favorably than white employees. Foster provides no specific examples of this disparate treatment other than to say that Jackson "constantly ridiculed her" and was "frequently looking to find fault and show blame wherever she could, while in the process ignoring white contemporaries' blatant policy violations and other unacceptable behavior." (Doc. #19 at ¶ 17, ¶ 19).

Their relationship deteriorated to the point that on March 5, 2009, Foster informed AUM's Chancellor of the hostile and racially discriminatory workplace that Jackson had created. To remedy this situation, the University hired an outside consultant to investigate, but Foster alleges that the consultant's investigation was directed by Jackson.

Furthermore, Jackson constantly harassed Foster for having to take FMLA leave for her disabilities: high blood pressure, diabetes, and neuropathy in the upper and lower extremities. Following the investigation of Foster's claim to the Chancellor and her FMLA leave requests, AUM terminated her on July 31, 2009, and at least part of her previous work responsibilities have been taken over by a white female.

## IV. DISCUSSION

AUM raises two main arguments in its Second Motion to Dismiss.  AUM argues that it should be considered an arm of the State of Alabama for Eleventh Amendment sovereign immunity purposes.  AUM also argues that both the ADEA and Title I of the ADA do not properly abrogate Alabama's Eleventh Amendment immunity, and, therefore, this court must dismiss Counts V and VI against AUM.

The text of the Eleventh Amendment to the United States Constitution explains that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  Alabama courts have consistently held that state run institutions of higher education are arms of the state.  *See*, *e.g.*, *Vandenberg v. Aramark Educational Services, Inc.*, Case No. 1100557, 1100560 and 1100561, ___ So. 3d ___, 2011 WL 4507358, *3 (Ala. September 30, 2011).  Accordingly, AUM is privileged to the same immunity granted to Alabama per the Eleventh Amendment.  *See LaFluer v. Wallace State Community College*, 955 F.Supp. 1406, 1422 (M.D. Ala. 1996) (De Ment, J.) ("Accordingly, because Wallace College is an agency of the State of Alabama, the Eleventh Amendment precludes the plaintiff from maintaining a § 1983 lawsuit against this entity.").

"Absent a valid waiver or abrogation, Alabama may not be sued in federal court for either money damages or injunctive relief." *Cobb v. Alabama*, No. 2:10cv502–MHT, 2011 WL 3666696, *2 (M.D. Ala. August 22, 2011) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).  The Plaintiff raises claims under both the ADEA and Title I of the ADA.  The Supreme Court has directly addressed whether those statutes properly abrogated Eleventh Amendment state sovereign immunity and answered in the negative.  *See Bd. of Trs. of the Univ. of Ala. v. Garrett*,

4

531 U.S. 356 (2001) (finding that Congress did not properly abrogate a state's immunity from suit by a private individual seeking monetary damages in the enactment of Title I of the ADA); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 92 (2000) ("Because the ADEA does not validly abrogate the States' sovereign immunity, however, the present suits must be dismissed."). Accordingly, a private citizen, like Foster, is barred by the Eleventh Amendment from bringing claims for monetary damages or injunctive relief against AUM under the ADEA or Title I of the ADA. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.").

Foster attempts to circumvent relevant Supreme Court precedent by relying on the language of 42 U.S.C. § 2000d-7 along with two cases *CSX Transportation, Inc. v. The City of Garden City*, 355 F.3d 1295 (11th Cir. 2004) and *Huffstutler v. Bergland*, 607 F.2d 1090 (5th Cir. 1979). 42 U.S.C. § 2000d-7 governs actions to enforce § 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and Title VI of the Civil Rights Act of 1964. The statute also contains a residual clause. Foster did not bring any claim under any of the enumerated statutes and have cited no cases for the proposition that the ADEA or Title I of the ADA would be governed by 42 U.S.C. § 2000d-7.

Foster's reliance on the *CSX* case is misplaced. Foster argues that the *CSX* case stands for a broad principal that a state waives its sovereign immunity by purchasing liability insurance; however, *CSX* actually dealt with whether a Georgia municipality waives its sovereign immunity pursuant to O.C.G.A. § 36-33-1(a) by purchasing an insurance policy for an occurrence in which

5

sovereign immunity would be available.  Because that case necessarily relied on Georgia law, it is inapplicable to the case at bar.

Lastly, Foster cites the *Huffstutler* case for the proposition that reinstatement is exempted from Eleventh Amendment immunity.  In actuality, the *Huffstutler* case did not address Eleventh Amendment sovereign immunity nor did it address the reinstatement remedies at issue in this case.  The reinstatement remedies at issue in this case are governed by 29 U.S.C. § 626(b) for the ADEA and 42 U.S.C. § 12117 for the ADA.  Both of these enforcement provisions are part of the same ADEA and ADA statutes which the Supreme Court found failed to properly abrogate state sovereign immunity.  Accordingly, those enforcement provisions cannot be properly brought against the State of Alabama or its agency AUM.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Second Motion to Dismiss is GRANTED.

2. Counts V and VI are DISMISSED with prejudice.

3.  This matter will proceed on Counts I, II, and III as to AUM, and Count II (§ 1981) as to Jackson.


Done this 12th day of March, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
UNITED STATES DISTRICT JUDGE